UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SUZAN RUSSELL,

                              Plaintiff,

        -v-

WESTCHESTER COMMUNITY
COLLEGE, VERONICA DELCOURT,
HEATHER OSTMAN, and
WESTCHESTER COUNTY,

                              Defendants.

---

No. 16-CV-1712 (KMK)

OPINION & ORDER

Appearances:

David S. Schwartz, Esq.
Phillips & Associates, PLLC
New York, NY
Counsel for Plaintiff

Irma W. Cosgriff, Esq.
Westchester County Attorney's Office
White Plains, NY
Counsel for Defendants

KENNETH M. KARAS, District Judge:

Plaintiff Dr. Suzan Russell ("Plaintiff") brings this Action asserting claims against

Westchester Community College ("WCC"), Veronica Delcourt, ("Dr. Delcourt"), Heather

Ostman ("Dr. Ostman"), Westchester County (the "County," and collectively, "Defendants") for

unlawful discrimination and retaliation under the Americans with Disabilities Act ("ADA"), 42

U.S.C. § 12101, and unlawful discrimination and retaliation under the New York State Human

Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 et seq., alleging that Plaintiff "was treated in a

discriminatory manner after having a series of heart problems and cardiac events, and was then

terminated after complaining about the discriminatory treatment."  (See Am. Compl. ¶ 1 (Dkt.

No. 18).)  Before the Court is Defendants' Motion To Dismiss pursuant to Federal Rules of Civil

Procedure 12(b)(1) and 12(b)(6) (the "Motion").  (*See* Dkt. No. 33.)  For the reasons to follow,

the Motion is denied.

<u>I.  Background</u>

<u>A.  Factual Background</u>

The following facts are drawn from Plaintiff's Amended Complaint and are assumed true

for the purpose of deciding the instant Motion.

<u>1.  Plaintiff's Tenure at WCC</u>

In 1988, Plaintiff was hired to teach two classes in the English Department at WCC.  (*See*

Am. Compl. ¶ 20.)  Plaintiff taught for a semester and was rehired in 2007 as an adjunct

professor.  (*See id.*)  Plaintiff again left WCC in 2010, but returned the following semester to the

same role as an adjunct professor.  (*See id.*)  In May 2014, Plaintiff was terminated from WCC.

(*See id.*)[1]  At the time of her termination, Plaintiff had an "expected salary" of approximately

$20,000, depending on the number of courses she taught during the semester and throughout the

summer term.  (*Id.* ¶ 22.)

<u>2.  Plaintiff's Medical Conditions</u>

Plaintiff "never had a problem with any faculty or students" "[t]hroughout nearly all of

[her] tenure as a professor for WCC," until 2013, "when [Plaintiff] began to suffer from a series

of heart related problems."  (*Id.* ¶¶ 23–24.)  On March 11, 2014, Plaintiff "was rushed to the

hospital" and diagnosed with an "Immediate Coronary Syndrome" and remained hospitalized for

several days.  (*Id.* ¶ 25.)  Plaintiff missed one day of work as a result of this episode.  (*See id.*)

---

[1] The Amended Complaint notes that Plaintiff has held faculty positions with New York
University, the University of Texas, the City University of the State of New York, and Montclair
State University.  (*See* Am. Compl. ¶ 21.)

Plaintiff informed Dr. Delcourt, the then-Associate Dean of Arts and Humanities, about her hospitalization and the fact that she was suffering from congenital heart conditions, and "[u]pon information and belief, Dr. Delcourt informed Dr. Ostman[,] [the then-Chair of the English Department,] of this fact." (*Id.* ¶¶ 5–6, 25–26.) Plaintiff was diagnosed with "supraventricular tachycardia, pulmonic valvular stenosis, premature ventricular contractions, and regurgitation of her mitral valve." (*Id.* ¶ 27.) "These conditions affected [Plaintiff's] daily life and have substantially limited her ability to perform various major life activities, including walking, standing, breathing, lifting, and, at times, concentrating." (*Id.* ¶ 28.) As a result, Plaintiff "has more difficulty than the average person performing normal household chores that require[] lifting, walking distances that most of the general population would be able to walk, concentrating while reading, and engaging in activities that require[] standing." (*Id.*) Plaintiff was informed that her conditions and prescribed medications may make her "feel irritable at times during the few months following the heart attack." (*Id.* ¶ 29.) The condition was likened "to that of post traumatic stress disorder" and "affected [Plaintiff's] ability to concentrate, sleep, and enjoy life in the manner that she did before suffering from these heart related conditions." (*Id.*) Plaintiff expressed this information to Dr. Delcourt and "[u]pon information and belief, Dr. Delcourt relayed [it] to Dr. Ostman." (*Id.* ¶ 30.)

### 3. Plaintiff's Termination

On or about April 30, 2014, Plaintiff "gave a failing grade to one of her students . . . because [the student] had plagiarized an assignment." (*Id.* ¶ 31.) Drs. Delcourt and Ostman alleged that the student lodged a complaint against Plaintiff with WCC's administration. (*See id.*) On May 2, 2014, Dr. Ostman sent an email to Dr. Delcourt and James Werner, the Chair of the WCC English Department, "claim[ing] that [Plaintiff] sent an 'antagonistic email' to [the

student]." (*Id.* ¶ 33.) In response, Dr. Delcourt replied to Dr. Ostman asking whether, "[g]iven [Plaintiff's] last email to her students, [Dr. Ostman felt] comfortable letting her continue the class through to finals." (*Id.* (internal quotation marks omitted).) In a subsequent email, Dr. Ostman "reference[d] [Plaintiff's] 'aggression' towards [the student]." (*Id.*) Plaintiff alleges that she sent a single email to the student on May 2, 2014 stating:

> Your second essay, as I mentioned to you the other day, was plagiarized including the bibliography, from Wikipedia.com. As such, you have received a zero on that paper and I will not pass you in the course. I will send your paper with all relevant source information on to the dean of students and to the chair of the English Dep[artment], Prof[essor] Jim Werner. Should you wish to further discuss this issue then please see Prof[essor] Werner. Given the disrespectful nature of your interaction with me on Wednesday, I am unwilling to speak with you about the matter.

(*Id.* ¶ 34 (internal quotation marks omitted).) Mr. Werner replied to Drs. Delcourt and Ostman stating:

> [Plaintiff] contends that [the student] has plagiarized in her class, and that as a result she stands to receive a failing grade for the course (a penalty that seems in accordance with her policy for 101 . . . ); is this in fact the case that [the student] has plagiarized? . . . [A]s far as I can see the only interaction between the two was the email from [Plaintiff] dated [May 2, 2014], . . . . Is this the "aggression" referred to . . . , or is there other evidence of aggression I haven't seen?

(*Id.* ¶ 36 (internal quotation marks omitted).)[2] Plaintiff avers that "Dr. Ostman and Dr. Delcourt did not follow any of the appropriate procedures that WCC lays out for when a student makes a complaint about a professor," and that they declined to do so because the "procedures would have ruined Dr. Delcourt's and Dr. Ostman's pretextual reason for terminating [Plaintiff]." (*Id.* ¶ 39.)

---

[2] The Court notes that the student was required to complete a plagiarism workshop. (Am. Compl. ¶ 38.)

On May 1, 2014, Dr. Ostman approached Plaintiff and "condemn[ed] her for having conferences with her students during some class hours," a practice Plaintiff had followed throughout her tenure and had never been reprimanded for prior to her cardiac episodes. (*Id.* ¶ 40.) In response to Dr. Ostman's actions, Plaintiff sent an email to Dr. Ostman asking for "proof that [the] request/demand of [Plaintiff] [that she not hold conferences with students during class hours] [could] be supported by college policy, county policy[,] or by any [S]upreme [C]ourt decisions." (*Id.* ¶ 42 (internal quotation marks omitted).) The following day, Plaintiff wrote to Dr. Ostman again, stating that following her heart attack, she "was given medical clearance to return to work, but [had] been having irregular heart rhythms and some chest discomfort" and had "been a little cranky," behavior for which, Plaintiff "humbly apologize[d]." (*Id.* ¶ 44 (internal quotation marks omitted).) On May 2, 2014, Dr. Delcourt sent an email to Plaintiff stating that "more than once [Plaintiff] admit[ted] to being grouchy due to [her] health" and asked that she "please consider whether [her] health may be interfering with [her] ability to teach." (*Id.* ¶ 47 (internal quotation marks omitted).)

Also on May 2, 2014, Dr. Delcourt emailed Dr. Ostman and Mr. Werner stating that she "[did] not feel the need to bring [Plaintiff] back" because "she [was] not a senior adjunct" and "[h]er communication with students as well as her admittance to being 'grouchy' and 'pushy' [was] unacceptable." (*Id.* ¶ 45 (some internal quotation marks omitted).) On the same day, Dr. Ostman sent an email to Dr. Delcourt, Mr. Werner, and Cynthia Robinson-Williams, stating, in part, "Please do not offer fall courses to [Plaintiff]; her work and conduct in the classroom this

semester have raised several questions about her competency and behavior with students."  (*Id.* ¶ 46 (internal quotation marks omitted).)[3]

From May 2 to May 12, 2014, Plaintiff "sent numerous emails to Dr. Delcourt, Dr. Ostman, [and] Mr. Werner, . . . complaining about being discriminated against on the basis of her disability."  (*Id.* ¶ 49.)  On May 9, 2014, Plaintiff "began to have chest pains, nausea, and an irregular heart rhythm," at which point an ambulance was called.  (*Id.* ¶ 50.)  On May 12, 2014, Ms. Robinson-Williams emailed Plaintiff to inform her that WCC would not be offering her any classes for the fall semester.  (*See id.* ¶ 51.)

Plaintiff contends that "Defendants' conduct created a hostile work environment for [her]" and that such conduct was "intentional, willful, and malicious."  (*Id.* ¶¶ 55, 57.)  Plaintiff seeks "an award of reinstatement, back pay, front pay, compensatory damages, attorney's fees and costs."  (*Id.* ¶ 58.)

### 4.  Plaintiff's Initiation of this Action

Plaintiff filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which "referred the charge to the Department of Justice."  (*Id.* ¶¶ 10– 11.)[4]  "Plaintiff's former counsel received a Notice of Right to Sue from [the Department of Justice] on December 10, 2016," and Plaintiff commenced this Action within 90 days of receipt of the Notice of Right to Sue.  (*Id.* ¶¶ 12–13.)  On July 31, 2014, Plaintiff sent to WCC President John Flynn and WCC Human Resources Director Sabrina Chandler-Johnson, "an eleven page 'statement of facts' outlining in detail the discrimination and retaliation that [Plaintiff] faced by

---

[3] Plaintiff's pleadings and the briefing on the Motion do not identify Ms. Robinson-Williams' role at WCC.

[4] Plaintiff does not indicate the date on which she filed charges with the EEOC.  (*See generally* Am. Compl.)

WCC, Dr. Delcourt, and Dr. Ostman." (*Id.* ¶ 14.) Plaintiff asserts that this statement of facts "comported with the content requirements of [New York General Municipal Law ('GML')] § 50-e. It included [Plaintiff's] name and address, the nature of her claims, the time[,] place, and manner in which her claims arose, and the manner in which she was damaged." (*Id.* ¶ 15.)

On August 14, 2014, Plaintiff "received . . . an email from the Westchester County Attorney, th[r]ough [Defendants' counsel], acknowledging that [counsel] had received the statement of facts, which [Plaintiff] planned to file with the EEOC." (*Id.* ¶ 16.) Defendants' counsel stated that "she would investigate the claims and that she was waiting for acknowledgment from the EEOC." (*Id.*) Plaintiff alleges that "[u]pon information and belief, Mr. Flynn, Ms. Chandler-Johnson, or both, gave [Plaintiff's] statement of facts to the County Attorney." (*Id.* ¶ 17.) No one from the Westchester County Attorney's Office "returned [Plaintiff's] notice of claim to her specifying any defect" and "[t]he County never contacted [Plaintiff] to schedule a 50-H hearing." (*Id.* ¶¶ 18–19.)

B.  Procedural History

Plaintiff filed her initial Complaint in this Action on March 7, 2016, (*see* Dkt. No. 1), and filed the Amended Complaint on July 29, 2016, (*see* Dkt. No. 18). Defendants filed their Motion To Dismiss and accompanying papers on February 2, 2017, (*see* Dkt. Nos. 33–37), and on March 15, 2017, Plaintiff filed her opposition, (*see* Dkt. No. 38). Defendants filed their reply in support of the Motion on April 5, 2017. (*See* Dkt. No. 41.)

II.  Discussion

A.  Standard of Review

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are substantively identical."

*Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (internal quotation marks omitted); *see also Neroni v. Coccoma*, No. 13-CV-1340, 2014 WL 2532482, at *4 (N.D.N.Y. June 5, 2014) (same), *aff'd*, 591 F. App'x 28 (2d Cir. 2015). "In deciding both types of motions, the Court must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff." *Gonzalez*, 2014 WL 2475893, at *2 (internal quotation marks omitted); *see also Seemann v. U.S. Postal Serv.*, No. 11-CV-206, 2012 WL 1999847, at *1 (D. Vt. June 4, 2012) (same). However, "[o]n a Rule 12(b)(1) motion, . . . the party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6)." *Gonzalez*, 2014 WL 2475893, at *2; *see also Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014) ("In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (internal quotation marks omitted)). This allocation of the burden of proof is "[t]he only substantive difference" between the standards of review under these two rules. *Smith v. St. Luke's Roosevelt Hosp.*, No. 08-CV-4710, 2009 WL 2447754, at *9 n.10 (S.D.N.Y. Aug. 11, 2009), *adopted by* 2009 WL 2878093 (S.D.N.Y. Sept. 2, 2009); *see also Fagan v. U.S. Dist. Court for S. Dist. of N.Y.*, 644 F. Supp. 2d 441, 446–47 & n.7 (S.D.N.Y. 2009) (same).

     1.  Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (internal quotation marks omitted). "Determining the existence of subject

matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *see also Butler v. Ross*, No. 16-CV-1282, 2016 WL 3264134, at *3 (S.D.N.Y. June 14, 2016) (same). Nevertheless, "[u]nlike Article III standing, which ordinarily should be determined before reaching the merits, statutory standing may be assumed for the purposes of deciding whether the plaintiff otherwise has a viable cause of action." *Coan v. Kaufman*, 457 F.3d 250, 256 (2d Cir. 2006) (citation omitted). While a district court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction," "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," in which case "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (alteration and internal quotation marks omitted); *see also Ray Legal Consulting Grp. v. Gray*, 37 F. Supp. 3d 689, 696 (S.D.N.Y. 2014) ("[W]here subject matter jurisdiction is contested a district court is permitted to consider evidence outside the pleadings, such as affidavits and exhibits.").

2. Rule 12(b)(6)

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations,

alterations, and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (internal quotation marks omitted)); *Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 176 (2d Cir. 2013) ("In reviewing a

dismissal pursuant to Rule 12(b)(6), we . . . accept all factual allegations in the complaint as

true . . . ." (alteration and internal quotation marks omitted)). Further, "[f]or the purpose of

resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the

plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing

*Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

B. Analysis

Defendants move to dismiss Plaintiff's claims pursuant to NYSHRL § 296 on the

grounds that Plaintiff failed to comply with the notice of claim requirements under state law, that

Defendants Drs. Delcourt and Ostman are not liable under the NYSHRL and are entitled to

qualified immunity, and that Plaintiff's NYSHRL claims are barred by the statute of limitations.

(*See generally* Mem. of Law in Supp. of Cty. Defs.' Mot. To Dismiss ("Defs.' Mem.") (Dkt. No.

35).)[5] Defendants additionally contend that Plaintiff's claims against WCC must be dismissed

because WCC "is not an entity capable of being sued." (*Id.* at 1.) The Court addresses each

argument in turn.

---

[5] The entirety of Defendants' arguments regarding the timeliness of Plaintiff's claims are
contained in the second footnote of their memorandum of law:

> It is unclear from the [Amended Complaint] when Plaintiff's claims arose—if it
> was in 2013 as she alleges in [¶¶] 23–24, all of her claims may be untimely. If
> however, Plaintiff is claiming that her NYSHRL claims arose on or about May 2,
> 2014, a [n]otice of [c]laim was required to be served within 90 days and it was not.
> Plaintiff cannot now seek permission to extend the time to file such a claim and in
> any event, she must seek such permission from the New York State Court and not
> the Federal Court.

(*See* Defs.' Mem. 1 n.2.) The Court does not read Plaintiff's Amended Complaint as asserting
that her claims arose in 2013. To the extent that Defendants' statute of limitations argument is
based upon the alleged insufficiency of her notice of claim, the Court addresses this argument
*infra*.

1.  Notice of Claim Requirements

a.  Scope of Applicability

"State claims brought under state law in federal court are subject to state procedural rules."  *Henneberger v. County of Nassau*, 465 F. Supp. 2d 176, 197 (E.D.N.Y. 2006) (citing *Felder v. Casey*, 487 U.S. 131, 141 (1988)).  In general, as a condition precedent to bringing a claim against a municipality, a plaintiff must file a notice of claim within 90 days after her claim accrues.  *See* N.Y. Gen. Mun. Law § 50-e(1)(a) ("In any case . . . where a notice of claim is required by law as a condition precedent to the commencement of an action . . . against a public corporation, . . . or employee thereof, the notice of claim shall comply with and be served in accordance with the provisions of this section within [90] days after the claim arises . . . ."); *see also Cavanaugh v. Bd. of Educ. of Huntington Union Free Sch. Dist.*, 745 N.Y.S.2d 433, 434 (App. Div. 2002) ("Where, as here, a plaintiff seeks private relief for employment discrimination in violation of the Executive Law, the timely filing of a notice of claim is a condition precedent to suit.").  "Notice of claim requirements are construed strictly" and "[f]ailure to comply with these requirements ordinarily requires dismissal for failure to state a cause of action."  *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793–94 (2d Cir. 1999) (internal quotation marks omitted).

"[N]ot only are the notice requirements of [§] 50-e applicable to claims brought pursuant to [§] 296 of the New York Executive Law, but the broader notice requirements of New York County Law § 52 are applicable as well."  *Cody v. County of Nassau*, 577 F. Supp. 2d 623, 647 (E.D.N.Y. 2008).  Section 52 of the New York County Law provides, in pertinent part:

> Any claim or notice of claim against a county for damage, injury or death, or for invasion of personal or property rights, of every name and nature . . . and any other claim for damages arising at law or in equity, alleged to have been caused or sustained in whole or in part or because of any misfeasance, omission of duty,

negligent or wrongful act on the part of the county, its officers, agents, servants or employees, must be made and served in accordance with [§ 50-e] of the [GML].

N.Y. Cty. Law § 52. "The plain language of [§] 52 clearly incorporates the notice of claim requirement contained in [§] 50-e of the [GML] and applies it to any claim or notice of claim against a county for invasion of personal or property rights, of every name and nature." *Cody*, 577 F. Supp. 2d at 648 (alterations, emphasis, and internal quotation marks omitted); *see also Henneberger*, 465 F. Supp. 2d at 198, 198 n.11 (collecting cases).

"There is disagreement . . . among the New York courts as to whether the notice of claim requirement set forth in [GML] § 50-e applies to causes of action brought for employment discrimination pursuant to [the NYSHRL]." *Cody*, 577 F. Supp. 2d at 647. When the action involves a county, "[r]ecent cases within the Eastern District of New York . . . have repeatedly held that not only are notice requirements of [GML §] 50-e applicable to claims brought pursuant to [NYSHRL], but the broader notice requirements of New York County Law § 52 are applicable as well." *Id.* (collecting cases). The New York Court of Appeals recently held that "[h]uman rights claims are not tort actions under [GML §] 50-e and are not personal injury, wrongful death, or damage to personal property claims under [§] 50-i," so that "a notice of claim need not be filed for a Human Rights Law claim against a municipality." *Margerum v. City of Buffalo*, 28 N.E.3d 515, 516, 519 (N.Y. 2015). The Court of Appeals further stated that it did not "perceive any reason to encumber the filing of discrimination claims." *Id.* at 519.

Neither Party addresses *Margerum* in their briefing on the instant Motion. However, the Parties do not dispute that a notice of claim is required as to claims against the County. (*See* Defs.' Mem. 8 ("A [p]laintiff attempting to bring a discrimination claim against a [c]ounty pursuant to NY[S]HRL must first file a timely notice of claim as required by [GML §§ 50-e and 50-i].")); Pl.'s Mem. of Law in Opp'n to Defs.' Mot. To Dismiss ("Pl.'s Opp'n") 3 (Dkt. No. 38)

("GML [§] 50 applies to claims against counties through County Law § 52.").) The Court

agrees. *Margerum* involved a claim against a city

> to which the more narrow notice of claim provisions of [GML] §§ 50-e and 50-i
> apply, limiting the requirement for notices of claim to "tort" claims or claims for
> "personal injury, wrongful death or damage to real or personal property." By
> comparison, County Law § 52 applies to the claim against [a county] . . . and
> mandates notices of claim in a much broader scope of matters . . . requiring that
> a notice of claim be filed for "*any claim* . . . against a county for damage" or "*any
> other claim* for damages arising at law or in equity."

*Sager v. County of Sullivan*, 41 N.Y.S.3d 443, 444 (App. Div. 2016) (alteration and citations

omitted). Therefore, a notice of claim remains a prerequisite to employment discrimination

claims against the County.

However, with respect to WCC, Plaintiff asserts that a notice of claim is not required

because "County Law § 52 applies only to suits against the [C]ounty itself, whereas GML [§] 50

applies to municipalities and public corporations," and GML § 50 does not cover claims brought

under the NYSHRL. (Pl.'s Opp'n 5.) "As such," Plaintiff contends, "claims brought against a

public corporation for violations of the NY[S]HRL are not subject to the notice of claim

requirements set forth in GML [§] 50." (*Id.*)

The Court agrees with Defendants that WCC is not a public corporation. (*See* Reply

Mem. of Law in Supp. of Cty. Defs.' Mot. To Dismiss ("Defs.' Reply") 3 (Dkt. No. 41)

("Plaintiff attempts to circumvent County Law § 52 because she believes that WCC is a 'public

corporation.' Plaintiff is wrong.").) As the Third Department has explained:

> By its express terms, [GML] § 50-i applies only to certain municipal entities.
> Community colleges are not included in the statute's list (*see* [GML] § 50-i(1)).
> Similarly, [GML] § 50-e requires that a notice of claim be served as a condition
> precedent to a tort action against a public corporation, as defined in the general
> construction law ([GML] § 50-e(1)(a)). Community colleges do not fall within the
> definition of a public corporation (*see* [Gen. Constr. Law] § 66(1)).

*Santandrea v. Bd. of Trs. of Hudson Valley Cmty. Coll.*, 894 N.Y.S.2d 585, 586 (App. Div. 2010) (internal quotation marks omitted). "The plain language of [GML §§ 50-e and 50-i] establishes that a notice of claim need not be served on a community college prior to commencement of an action." *Id.* at 586–87.

However, while the GML does not impose a notice of claim requirement with regard to WCC, other provisions of New York state law provide otherwise. Indeed, "[r]ecent cases within the Eastern District of New York have repeatedly held that not only are the notice requirements of [§] 50-e applicable to claims brought pursuant to [§] 296 of the New York Executive Law, but the broader notice requirements of New York County Law § 52 are applicable as well." *Cody*, 577 F. Supp. 2d at 647 (collecting cases). "The plain language of [§] 52 clearly incorporates the notice of claim requirement contained in [GML §] 50-e . . . and applies it to any claim or notice of claim against a county for invasion of personal or property rights, *of every name and nature.*" *Id.* at 648 (alterations and internal quotation marks omitted); *see also Horvath v. Daniel*, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006) (finding that County Law [§] 52 incorporates the notice of claim requirements contained in GML [§] 50-i); *Henneberger*, 465 F. Supp. 2d at 198 n.11 ("While [§§] 50-e and 50-i specifically apply to tort claims under New York law, [§] 52 applies their service requirements to any claim or notice of claim against a county for invasion of personal or property rights, of every name and nature." (alterations and internal quotation marks omitted)). In light of the above, the Court finds that a notice of claim is required for claims against WCC. *See Cody*, 577 F. Supp. 2d at 647 "Th[e] notice of claim provision covers [the] plaintiff's claims against Nassau County and its entities, which would include Nassau Community College, an entity that is owned and operated by the County and whose employees

are considered County employees." (citation and internal quotation marks omitted)).  The Court thus turns to an analysis of the sufficiency of Plaintiff's notice of claim.

### b.  Contents of the Notice of Claim

New York General Municipal Law § 50-e requires that a notice of claim "be in writing, sworn to by or on behalf of the claimant" and contain "(1) the name and post-office address of each claimant, and of his attorney, . . . ; (2) the nature of the claim; (3) the time when, the place where and the manner in which the claim arose; and (4) the items of damage or injuries claimed to have been sustained . . . ."  N.Y. Gen. Mun. Law § 50-e(2).

Defendants argue that Plaintiff "admits that she never served a [n]otice of [c]laim, but she argues that her EEOC [c]omplaint which was sent to Flynn and Chandler-Johnson at WCC via priority mail on July 31, 2014 should somehow suffice and excuse her from the prerequisites of the right to sue under the law."  (Defs.' Mem. 9 (emphasis omitted).)[6]

As Defendants correctly point out, "[c]ourts in the [S]econd Circuit have rejected the proposition that an EEOC complaint may be construed as a notice of claim."  (*Id.* at 10 (internal quotation marks omitted)).  However, the Court disagrees with Defendants' characterization of Plaintiff's claims.  Plaintiff does not "argue that her EOCC [c]omplaint . . . should . . . suffice" as a notice of claim.  (*Id*. at 9.)  Rather, Plaintiff alleges that she sent "an eleven page 'statement of facts' outlining in detail the discrimination and retaliation that she faced by WCC, Dr. Delcourt, and Dr. Ostman," and that such document "comported with the content requirements of . . . GML § 50-e" because "[i]t included [Plaintiff's] name and address, the nature of her claims, the time[,]

---

[6] The Court disagrees with Defendants' contention that Plaintiff "admits that she never served a [n]otice of [c]laim," (Defs.' Mem. 9), and similarly disagrees with Plaintiff's assertion that Defendants "do not argue any defects with Plaintiff's notice of claim itself," (Pl.'s Opp'n 4).

place, and manner in which her claims arose, and the manner in which she was damaged." (Am. Compl. ¶¶ 14–15.)[7]

Defendants contend that Plaintiff "attempts to characterize the EEOC Complaint as a 'statement of facts'" to avoid running afoul of adverse decisions from courts within the Second Circuit "reject[ing] the proposition that an EEOC complaint may be construed as a notice of claim." (Defs.' Mem. 10 (internal quotation marks omitted) (citing cases from the district courts

---

[7] In their Motion To Dismiss, Defendants assert

> In her initial [C]omplaint, Plaintiff alleges that she filed an EEOC [c]omplaint and received a Right to Sue letter. There is no allegation that she complied with the [n]otice of [c]laim provisions . . . . In her [Amended Complaint], Plaintiff now attempts to correct this fatal defect by claiming: 1) on July 31, 2014, she sent a "statement of facts" by priority mail to WCC president John Flynn and HR Director Sabrina Chandler-Johnson; and 2) [o]n August 14, 2014, Plaintiff received an email from [the Senior Assistant County Attorney] acknowledging that WCC had forwarded to her the proposed EEOC [c]omplaint that Plaintiff intended to file with the EEOC.

(Defs.' Mem. 4 (citation and emphasis omitted).) At a conference before the Court on July 13, 2013, Plaintiff was granted leave to file an Amended Complaint. (See Dkt. (minute entry for July 13, 2016).)

While courts are free to deny leave to amend a complaint if the proposed amended complaint attempts to omit certain previously-alleged facts without adequate explanation or in bad faith, see Austin v. Ford Models, Inc., 149 F.3d 148, 155 (2d Cir. 1998) (affirming district court's denial of leave to amend a complaint where plaintiff sought to "erase . . . admissions [made] in [the previous] complaint" (alteration and internal quotation marks omitted)), abrogated on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), once an amended pleading is filed, a court may not import information that was contained in the prior pleading but omitted from the amended pleading, see Tran v. Alphonse Hotel Corp., 281 F.3d 23, 32 (2d Cir. 2002) (affirming the district court's decision to disregard the plaintiff's admission in a prior complaint that had been superseded by an amended complaint omitting the admission and noting that "[a] statement in a withdrawn complaint that is superseded by an amended complaint without the statement is no longer a conclusive judicial admission"), overruled on other grounds by Slayton v. Am. Express Co., 460 F.3d 215 (2d Cir. 2006); but see In re Enron Corp., 370 B.R. 583, 597–99 (Bankr. S.D.N.Y. 2007) (considering allegations made in a prior pleading, which were omitted from the amended pleading, because claimant had not provided a legitimate explanation for the omission). Here, accordingly, the Court will not consider allegations contained in Plaintiff's initial pleading.

for the Eastern and Southern Districts of New York).)  However, each of the cases Defendants cite is one in which the plaintiff argued that the filing of their charge *with the EEOC* could substitute for serving a notice of claim on the defendants.  *See Friel v. County of Nassau*, 947 F. Supp. 2d 239, 248 (E.D.N.Y. 2013) (dismissing the argument that an "EEOC charge could be considered a substitute for a notice of claim"); *Baker v. County of Monroe*, 47 F. Supp. 2d 371, 375 (W.D.N.Y. 1999) (dismissing the plaintiff's argument that the filed EEOC charge could serve as "a substitute for a notice of claim"); *Wrenn v. N.Y.C. Health & Hosps. Corp.*, 104 F.R.D. 553, 557 (S.D.N.Y. 1985) ("The [p]laintiff asserts that he served notice of claim upon [the defendant] by virtue of filing his charge with the EEOC." (internal quotation marks omitted)); *but see Olsen v. County of Nassau*, No. 05-CV-3623, 2008 WL 4838705, at *1 (E.D.N.Y. Nov. 4, 2008) (dismissing the plaintiffs' contention that "either their EEOC charges or the sworn statements provided to the County during the course of the County's investigation into those charges suffice to provide the County with the information required to be included in a notice of claim").  That is, in each these cases, with one exception, the plaintiff did not serve anything on the defendants, EEOC charge or otherwise.

The instant case is factually distinct.  Plaintiff did not file her charge with the EEOC and then assume that by doing so, she had complied with the notice of claim requirements under GML § 50-e.  Rather, Plaintiff alleges that she sent a "statement of facts [that] comported with the content requirements of GML . . . § 50-e."  (Am. Compl. ¶ 15.)  Plaintiff further alleges that her "statement of facts" contained her "name and address, the nature of claims, the time[,] place, and manner in which her claims arose, and the manner in which she was damaged."  (*Id.*)  In terms of content, nothing more is required.  *See* N.Y. Gen. Mun. Law § 50-e(2) (a notice of claim must contain "(1) the name and post-office address of each claimant, and of his attorney, . . . ; (2)

the nature of the claim; (3) the time when, the place where and the manner in which the claim arose; and (4) the items of damage or injuries claimed to have been sustained . . . .").

To the extent that Defendants argue that Plaintiff's statement of facts sent on July 31, 2014 to Flynn and Chandler-Johnson was *identical* to the charge she filed with the EEOC, the significance of this fact is unclear.[8]  Assuming, as it must at this stage, that Plaintiff's allegations regarding the contents of the statement of facts are true, *see Tandon*, 752 F.3d at 243 ("[The court] must take all uncontroverted facts in the complaint . . .  as true, and draw all reasonable inferences in favor of the party asserting jurisdiction."), the fact that such contents may also suffice for an EEOC charge is not dispositive.  The Court thus finds that Plaintiff's statement of facts suffices as a notice of claim and therefore turns to the question of adequacy of service.

### c.  Service of the Notice of Claim

In relevant part, New York County Law § 52 provides that claims against a county "must be made and served in compliance with [§ 50-e] of the [GML]" and that "[e]very action upon such claim shall be commenced pursuant to the provisions of [§ 50-i] of the [GML]."  N.Y. Cty. Law § 52(1).  GML § 50-e requires a plaintiff to serve a defendant with a notice of claim within 90 days after the claim arises.  *See* N.Y. Gen. Mun. Law § 50-e(l)(a).  GML § 50-i requires a plaintiff to allege in the complaint that "at least [30] days have elapsed since the service of such notice . . . and that adjustment or payment thereof has been neglected or refused."  *Id*. § 50-i(1)(b).

---

[8] While Defendants include Plaintiff's notice of claim as an exhibit to their Motion, neither Party has provided the Court with the document Plaintiff filed with the EEOC.  *See Riccardo v. N.Y.C. Dep't of Educ.*, No. 16-CV-4891, 2016 WL 7106048, at *9 (S.D.N.Y. Dec. 2, 2016) ("Without the information necessary to determine whether the EEOC complaint meets any of the preconditions to serve as a substitute for a notice of claim, dismissal for failure to file a notice of claim would be inappropriate.").

Defendants argue that even if Plaintiff provided a factually sufficient notice of claim, "it was served improperly" because "[s]ervice was not made in compliance with [GML § 50-e(3)]." (Defs.' Mem. 11.)  General Municipal Law § 50-e(3), provides that "[t]he notice shall be served on the public corporation against which the claim is made by delivering a copy thereof personally, or by registered or certified mail, to the person designated by law . . . , or to an attorney regularly engaged in representing such public corporation . . . ."  N.Y. Gen. Mun. Law § 50-e(3)(a).  New York Civil Practice Law and Rules ("CPLR") § 311 provides that service may be made "upon a county, to the chair or clerk of the board of supervisors, clerk, attorney or treasurer."  N.Y. C.P.L.R. § 311(a)(4).

Plaintiff alleges only that she sent her notice of claim "by United States Postal Service priority mail to WCC President John Flynn and HR Director Sabrina Chandler-Johnson," (Am. Compl. ¶ 14), neither of whom serves in the positions delineated in CPLR § 311.  However, as Plaintiff notes, GML § 50-e(3)(c) specifically contemplates circumstances in which a notice of claim is served a deficient manner.  *See* N.Y. Gen. Mun. Law § 50-e(3) (titled "How served; when service by mail complete; *defect in manner of service*; return of notice improperly served" (emphasis added)).

> If the notice is served within the period specified by this section, but in a manner not in compliance with the provisions of this subdivision, the service shall be valid if the public corporation against which the claim is made demands that the claimant or any other person interested in the claim be examined in regard to it, *or if the notice is actually received by a proper person within the time specified by this section, and the public corporation fail[s] to return the notice, specifying the defect in the manner of service, within [30] days after the notice is received*.

*Id.* § 50-e(3)(c) (emphasis added).[9]  Here, Plaintiff alleges that she "received . . . an email from

the Westchester County Attorney, . . . acknowledging that [Defendants' counsel] had received the

statement of facts, which [Plaintiff] planned to file with the EEOC."  (Am. Compl. ¶ 16; Decl. of

Irma W. Cosgriff, Esq. ("Cosgriff Decl.") Ex. C (Dkt. No. 34).)  While the email from

Defendants' counsel states that "[i]t remains the County's position that, inter alia, [Plaintiff] did

not avail [her]self of the procedures the County has in place for addressing the allegations

[Plaintiff] raise[s] in [her] EEOC complaint," (Cosgriff Decl. Ex. C, at 1), Defendants' counsel

"fail[ed] to return the notice, specifying the defect in the manner of service, within [30] days

after the notice [was] received," GML § 50-e(3)(c).  Accordingly, because Defendants' counsel is

an "attorney regularly engaged in representing such public corporation," N.Y. Gen. Mun. Law

§ 50-e(3)(a), and thus, a "proper person," *id.* § 50-e(3)(c), the Court thus finds that Plaintiff has

complied with the notice of claim requirements.

### 2.  Claims Against WCC

Defendants contend that "WCC is not a suable entity" as it is a department of Westchester

County.  (Defs.' Mem. 11.)  In support of this proposition, Defendants cite four cases, none of

which squarely addresses the issue raised in the instant Motion.  In *Leitner v. Westchester

Community College*, 779 F.3d 130 (2d Cir. 2015), the Second Circuit affirmed the decision of the

district court, finding that WCC was not entitled to sovereign immunity under the Eleventh

---

[9] In response to this argument, Defendants reiterate their arguments with respect to the
*contents* of the notice of claim, which the Court has already discussed.  (*See* Defs.' Reply 2
("[A]n EEOC complaint (which is not a substitute for a [n]otice of [c]laim) was sent by priority
mail to Flynn and Chandler-Johnson [and] did not comply with the statutory requirements[,] and
the fact that [Defendants' counsel] had received a copy of the EEOC complaint likewise does not
satisfy the statute."); *id.* at 3 ("[T]he fact that Plaintiff sent an EEOC complaint to WCC by
priority mail at or about the same time she filed it with the EEOC does not cure the fatal defect
which necessitates the dismissal of all of the NYSHRL claims.").)

Amendment. *See id.* at 140. While the Second Circuit noted that "[t]he laws of Westchester County provide that WCC is a county department," *id.* at 132, it did not opine as to whether such a determination, pursuant to County law, renders WCC a non-suable entity. In *Allen v. County of Westchester*, 492 N.Y.S.2d 772 (App. Div. 1985), the plaintiff "*consented* to the granting of . . . the motion which sought to . . . dismiss the action as to defendant Westchester Community College," but the court was silent as to the plaintiff's ability to sue WCC. *Id.* at 773 (emphasis added). In *Butterfield v. Board Trustee of Schenectady County Community College*, 516 N.Y.S.2d 544 (App. Div. 1987), the Appellate Division similarly said nothing of whether the defendant community college was an entity capable of being sued. *See id.* at 545 ("Since Schenectady County is under a statutory duty to indemnify the trustees, it is a real party in interest regardless of the fact that it was not named as a defendant in the lawsuit.").

Finally, Defendants cite *Feingold v. Hanklin*, 269 F. Supp. 2d 268 (S.D.N.Y. 2003), stating that now-Chief Judge Colleen McMahon "concluded that the only way to obtain personal jurisdiction over WCC, *which is not capable of being sued*, is pursuant to CPLR [§] 311(a)(4)." (Defs.' Mem. 12 (emphasis added).) "In other words," Defendants argue, "a suit against WCC is actually a suit against the County." (*Id.*) Defendants' characterization of Judge McMahon's opinion is off the mark, as Judge McMahon made no finding as to whether or not WCC was a suable entity. Instead, Judge McMahon noted that "[t]he exact relationships between WCC, its senior officers, and the County that sponsors it turns out to be a thorny question. Its resolution is central to deciding who is a proper party to this action, who should have been served and how." *Feingold*, 269 F. Supp. 2d at 274. Judge McMahon noted—as did the *Leitner* Court—that WCC "is a department of Westchester County," and held that the County "was the proper party defendant . . . , and the County was neither named as a defendant nor properly served." *Id.*

Judge McMahon ultimately held that "[n]one of [the persons designated by CPLR § 311(a)(4)] was served with process in [the] case." *Id.* In concluding that "the only way to obtain personal jurisdiction over WCC [was] to serve [it] pursuant to CPLR [§] 311(a)(4)," Judge McMahon turn[ed] to "[t]he question . . . [of] whether the [p]laintiff's action against WCC must be dismissed, or whether [the court] may provide [the plaintiff] with an extension of time to effect proper service." *Id.* at 275–76. Judge McMahon chose the latter option. *See id.* at 277 ("[D]iscretionary extension of the time period of service is warranted . . . [and] dismissal based on improper service and the consequent lack of personal jurisdiction is denied."). *See also Feingold v. Hanklin*, 269 F. Supp. 2d 278, 278 (S.D.N.Y. 2003) ("On May 5, 2003, this Court issued a Memorandum Decision and Order (1) dismissing Plaintiff's claims against the individual Defendants in their individual capacity; (2) finding that Plaintiff had failed to properly serve WCC; and (3) *granting Plaintiff an extension of time to effect service on WCC.*" (emphasis added)), *aff'd in relevant part*, 91 F. App'x 176 (2d Cir. 2004).[10] Defendants have offered no case law—and the Court is aware of none—that precludes suit against WCC. Thus, the Court declines to dismiss the claims against WCC.[11]

_____

[10] The May 5, 2003 Memorandum Decision and Order was amended on June 10, 2003 to reflect an "[a]mendment to title only[;] [n]o text of the original decision, issued May 5, 2003, [was] altered by [the] amendment." *See Feingold*, 269 F. Supp. 2d at 269 n.1.

[11] The Court notes that even if it were to find that WCC is "merely [an] administrative arm[] of a municipality [and] do[es] not have a legal identity separate and apart from the municipality and cannot sue or be sued," *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002), the proper course of action would be to substitute as defendant the County of Westchester, which is already named in this Action, *see* Fed. R. Civ. P. 21 (providing that "on its own, the court may at any time, on just terms, add . . . a party"); *see also Feingold*, 269 F. Supp. 2d at 269 (noting that Westchester County was "the real party in interest to [the] named defendant Westchester Community College").

In any event, the issue is ultimately immaterial. Should Plaintiff prove successful on her claims, Westchester County would be responsible for satisfying any judgment against WCC. *See Leitner*, 779 F.3d at 137–38 ("[New York] state is not . . . responsible for WCC's debts or for satisfying judgments against WCC. Rather, Westchester County, which appoints half of WCC's

<u>3. Claims Against Drs. Delcourt and Ostman</u>

Defendants assert that "service of a [n]otice of [c]laim upon each employee is a condition precedent to the commencement of an NYSHRL action," (Defs.' Mem. 12 (citing *Seale v. Madison County*, 929 F. Supp. 2d 51, 72 (N.D.N.Y. 2013))), and that failure to file a notice of claim against Drs. Delcourt and Ostman "renders any of the NYSHRL claims defective as a matter of law" and divests this Court of jurisdiction over such claims, (*id.* at 13).

"[T]he New York Court of Appeals has yet to resolve a split among the intermediate appellate courts on whether [GML] § 50-e requires that individual defendants be named in a notice of claim." *W.A. v. Hendrick Hudson Cent. Sch. Dist.*, No. 14-CV-8093, 2016 WL 1274587, at *13 n.15 (S.D.N.Y. Mar. 31, 2016); *see also Bailey v. City of New York*, 79 F. Supp. 3d 424, 453 (E.D.N.Y. 2015) (discussing the split between Fourth Department and First Department of the Appellate Division); *Reyes v. City of New York*, 992 F. Supp. 2d 290, 301 (S.D.N.Y. 2014) (same).

The Fourth Department has held that a plaintiff need not name each individual defendant in a notice of claim, *see Goodwin v. Pretorius*, 962 N.Y.S.2d 539, 545 (App. Div. 2013) ("[C]ourts have misapplied or misunderstood the law in creating, by judicial fiat, a requirement for notices of claim that goes beyond those requirements set forth in the statute. If the legislature had intended that there be a requirement that the individual employees be named in the notices of claim, it could easily have created such a requirement."), while the First Department has taken the opposite approach, *see Cleghorne v. City of New York*, 952 N.Y.S.2d 114, 117 (App. Div. 2012) ("[T]he action cannot proceed against the individual defendants because they were not

---

Board . . . , has the power to issue bonds and levy taxes to raise funds for WCC. Additionally, if WCC exceeds its budget, the excess is borne by local, not state, sponsors." (citation omitted)).

named in the notice of claim."). "The greater weight of New York appellate authority disagrees with [the First Department's] reasoning" requiring a notice of claim, *Kennedy v. Arias*, No. 12-CV-4166, 2017 WL 2895901, at *12 (S.D.N.Y. July 5, 2017), and the Second and Third Departments have since sided with the Fourth Department, *see Blake v. City of New York*, 51 N.Y.S.3d 540, 545 (App. Div. 2017) (agreeing "with the Third and Fourth Departments . . . [that] [l]isting the names of the individuals who allegedly committed the wrongdoing is not required"); *Pierce* v. *Hickey*, 11 N.Y.S.3d 321, 323 (App. Div. 2015) (finding there was no "require[ment] that an individual municipal employee be named in the notice of claim").

"When the highest state court has not ruled directly on an issue presented, a federal court must make its best estimate as to how the state's highest court would rule in the case." *Reyes*, 992 F. Supp. 2d at 301 (alteration and internal quotation marks omitted). "A number of courts in the Second Circuit have predicted that the New York Court of Appeals will likely adopt the Fourth Department's well-reasoned conclusion that there is no requirement that individual defendants be specifically named in the notice of claim." *W.A.*, 2016 WL 1274587, at *13 n.15 (alterations and internal quotation marks omitted); *see also Matthews v. City of New York*, No. 15-CV-2311, 2016 WL 5793414, at *10 n.5 (S.D.N.Y. Sept. 30, 2016) ("The individual defendants seek dismissal of the state law claims because [the [p]laintiff failed to name . . . them in her [n]otice of [c]laim[]. . . . This court agrees with the more recent district court decisions . . . and finds that failure to name individual defendants in a notice of claim is not an independently sufficient ground for dismissal."); *Bailey*, 79 F. Supp. 3d at 453; *Reyes*, 992 F. Supp. 2d at 302.

This Court follows their lead.[12]  Thus, Plaintiff's failure to name Drs. Delcourt and Ostman in her notice of claim is not a basis upon which to dismiss the claims against these Defendants.

### 4.  Qualified Immunity

Defendants contend that even "[w]ithout addressing whether Plaintiff has alleged a plausible disability claim under the ADA or NYSHRL, [Drs.] Ostman and Delcourt are immune from suit" because "[t]he acts attributed to [them] were in the course of the performance of their duties within the scope of their authority."  (Defs.' Mem. 13.)

"New York affords government officials and employees immunity for discretionary conduct."  *Dawson v. County of Westchester*, 351 F. Supp. 2d 176, 199 (S.D.N.Y. 2004).[13]

---

[12] The Court notes that Defendants recognize the split in a footnote of their Motion.  (*See* Defs.' Mem. 13 n.11 ("Plaintiff was required to name [Drs.] Ostman and Delcourt in a [n]otice of [c]laim which she did not do.  However, the Court of Appeals has not ruled on whether individuals must be named in a notice of claim." (citations omitted)).)  In opposition, Plaintiff notes that whether "a notice of claim is required to name individual defendants is currently an issue of debate in New York Appellate Courts as well as [c]ourts in the Second Circuit."  (Pl.'s Opp'n 8.)  In reply, Defendants fail to respond to Plaintiff's argument, reiterating only that "where a [c]ounty has a duty to indemnify its employees, the service of a [n]otice of [c]laim upon each employee is a condition precedent to the commencement of an NYSHRL action." (Defs.' Reply 6.)

[13] In their Reply, Defendants state that in *Dawson*, 351 F. Supp. at 200, "the [c]ourt granted qualified immunity for [the individual defendants] on the NYSHRL claims."  (Defs.' Reply 7.)  While the *Dawson* court indeed found that the individual defendants were entitled to qualified immunity, *see* 351 F. Supp. at 200 ("[W]e conclude that both [individual defendants] enjoy qualified immunity with respect to [the] plaintiffs' NYSHRL claims against them.  Their actions involving the investigations into [the] plaintiffs' complaints and the actions taken as a result were discretionary in nature, involving the exercise of reasoned judgment."), the Court notes that this finding was made on a motion for summary judgment, *see id.* ("There is *no evidence in the record* to support a finding that the investigation, while perhaps not resulting in a prompt and adequate remedy, was undertaken in bad faith or without a reasonable basis." (emphasis added)).  Defendants also cite *Hiller v. County of Suffolk*, 81 F. Supp. 2d 420 (E.D.N.Y. 2000), which was decided on a motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50.  *See id.* at 424 ("[N]o reasonable jury could find that [the individual defendants'] actions were undertaken in bad faith or were without reasonable basis. Accordingly, judgment as a matter of law granting them qualified immunity from liability in their individual capacities under the Human Rights Law is appropriate.").

"[G]overnment officials or employees who make decisions that are discretionary, but not judicial in nature, are entitled to qualified immunity *unless there is bad faith or the action is taken without a reasonable basis*, even where a claim is based on a violation of the NYSHRL." *Id.* at 200 (emphasis added) (internal quotation marks omitted).

> [R]ecognition that governmental immunity may be asserted as to Human Rights Law claims does not thus render that statute unenforceable against state actors, because the immunity is qualified, not absolute, as to non-judicial matters. Thus, notwithstanding immunity, public officials would still be liable for acts of discrimination made unlawful by the Human Rights Law if they are undertaken in bad faith or without reasonable basis.

*Hiller v. County of Suffolk*, 81 F. Supp. 2d 420, 423 (E.D.N.Y. 2000). Therefore, "[q]ualified immunity—unlike absolute immunity—is negated by bad faith or the lack of any reasonable basis for the action." *Madden ex rel. Madden v. Town of Greene*, 949 N.Y.S.2d 326, 332 (Sup. Ct. 2012); *see also Lore v. City of Syracuse*, 670 F.3d 127, 167 (2d Cir. 2012) (finding on an appeal from a judgment that the jury "was not asked to make a factual finding as to whether [an individual defendant] had acted in good faith, *a fact that was essential to his state-law defense of qualified immunity on the [New York State Human Rights Law] claim*." (emphasis added)).[14]

A discretionary decision involves "the exercise of reasoned judgment which could typically produce different acceptable results whereas a ministerial act envisions direct adherence to a governing rule or standard with a compulsory result." *Tango v. Tulevech*, 471 N.Y.S.2d 73, 77 (1983). Here, while Drs. Delcourt and Ostman may have made the discretionary decision to

---

[14] In their Motion, Defendants cite to several state-court decisions, the most recent of which is 27 years old and none of which addresses qualified immunity in the context of claims pursuant to NYSHRL § 296. (*See* Defs.' Mem. 14 (citing *Tango v. Tulevech*, 471 N.Y.S.2d 73 (1983); *Haddock v. City of New York*, 532 N.Y.S.2d 379 (App. Div. 1988); *Wolcott v. Broughton*, 409 N.Y.S.2d 559 (App. Div. 1978); *Pekar v. Town of Veteran*, 395 N.Y.S.2d 705 (App. Div. 1977); *Van Buskirk v. Bleiler*, 360 N.Y.S.2d 88 (App. Div. 1974)).) Defendants' reliance on these cases is particularly curious given their cynicism about Plaintiff's citation to "a 47 year old New York State Supreme Court case." (Defs.' Reply 5.)

terminate Plaintiff's employment in the scope of their authority, Plaintiff has sufficiently alleged that this decision was taken with discriminatory intent and in bad faith. (*See, e.g.*, Am. Compl. ¶ 54 ("Defendants regarded Plaintiff as having a condition that impaired her major life activities, and discriminated against her based on this perception."); *id.* ¶ 56 ("Defendants . . . unlawfully retaliated against . . . Plaintiff . . . based on her complaints of discrimination . . . ."); *id.* ¶ 57 ("Defendants' conduct was intentional, willful, and malicious.); *id.* ¶ 69 ("[Defendants . . . discriminat[ed] against Plaintiff because of her disability.").) "For purposes of combating [D]efendants' [M]otion, [P]laintiff has adequately pleaded the circumstances she believes to be discriminatory, thereby giving [D]efendants fair notice of her claims and the grounds upon which such claims rest. A more detailed account of the alleged discriminatory conditions of employment is not required at this time." *Davis v. N.Y.C. Dep't of Educ.*, No. 10-CV-3812, 2012 WL 139255, at *8 (E.D.N.Y. Jan. 18, 2012).

The Court thus declines to dismiss Plaintiff's claims against the individual Defendants on the basis of qualified immunity. Defendants may choose to renew their claims for qualified immunity should they file a motion for summary judgment on a more fully developed record. *See McKenna v. Wright*, 386 F.3d 432, 434 (2d Cir. 2004) ("[A] qualified immunity defense can be presented in a [motion to dismiss], but . . . the defense faces a formidable hurdle when advanced on such a motion.").[15]

---

[15] As to Defendants' arguments with respect to the sufficiency of Plaintiff's claims for hostile work environment and aiding and abetting, (*see* Defs.' Mem. 7 n.9 ("[T]he [Amended Complaint] is devoid of any allegations rising to the level of a hostile work environment."); *id.* at 14 ("Plaintiff has not alleged sufficient facts to establish that [Defendants] should be individually liable under the NYSHRL section for 'aiding and abetting.'")), the Court declines to consider these arguments in this Opinion & Order. As Defendants note, the "[M]otion [was] limited to . . . the issues related to whether this Honorable Court has subject matter jurisdiction over Plaintiff's NYSHRL claims as she . . . failed to comply with the provisions of New York State County Law

## III. Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is denied. The Court will hold a status conference on October 26, 2017 at 2:00 p.m.

The Clerk of Court is respectfully requested to terminate the pending Motion. (*See* Dkt. No. 33.)

SO ORDERED.

Dated:    September 27, 2017
          White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[§] 52 . . . and . . . [GML §§] 50-e or 50-i . . . regarding the serving of a [n]otice of [claim] . . . ." (*Id.* at 2.)