UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SUZAN RUSSELL,

                              Plaintiff,

              -against-

WESTCHESTER COMMUNITY COLLEGE,
et al.,

                              Defendants.

**<u>OPINION AND ORDER</u>**

16-CV-01712 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

Suzan Russell ("Plaintiff") initiated this action on March 7, 2016 (Doc. 1) and filed an Amended Complaint—the operative pleading—on July 29, 2016 (Doc. 18, "Am. Compl."), asserting claims against Westchester Community College ("WCC"), Veronica Delcourt, ("Dr. Delcourt"), Heather Ostman ("Dr. Ostman"), and Westchester County (the "County," and collectively, "Defendants"). Plaintiff's theories of liability included claims for unlawful discrimination and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and unlawful discrimination and retaliation under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 296 *et seq.*, alleging that she was discriminated against for having heart problems; and was not offered to teach classes for the Fall 2014 semester in retaliation for complaining about the discriminatory treatment. (*See* Am. Compl.).

By Opinion & Order on September 27, 2017, Judge Karas denied Defendants' motion to dismiss the Amended Complaint. (Doc. 42).[1] Defendants filed their Answer on October 11, 2017

---

[1] This decision is also available on commercial databases. *See Russell v. Westchester Cmty. Coll.*, No. 16-CV-01712, 2017 WL 4326545 (S.D.N.Y. Sept. 27, 2017).

(Doc. 43), and the parties then engaged in discovery for four and a half years. Discovery in this case ultimately concluded on April 29, 2022, following a "lengthy and tortured path." (Doc. 193).[2]

Defendants, in accordance with the briefing schedule set by the Court, moved for summary judgment dismissing the Amended Complaint. (Doc. 247; Doc. 249, "Def. Br."; Docs. 250, 251, "Cosgriff Decl."). Plaintiff opposed (Doc. 252, "Opp. Br."; Doc. 254, "Tobin Decl."), and the motion was fully submitted with the filing of the motion, opposition, and Defendants' reply papers in further support of the motion on December 19, 2022 (Doc. 257, "Reply Br.").

For the reasons set forth below, Defendants' motion for summary judgment is GRANTED.

## BACKGROUND

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion for summary judgment and draws them from the pleadings, Defendants' Rule 56.1 Statement and Plaintiff's responses thereto (Doc. 254-37, "56.1"), and the admissible evidence proffered by the parties. Unless otherwise indicated, the facts cited herein are undisputed.

Plaintiff alleges that she began to suffer a series of heart problems in 2013. (Am. Compl. ¶ 24). She was employed as an adjunct professor at WCC at the time. (56.1 ¶¶ 7, 9).[3] On March 11, 2014, Plaintiff was taken to Beth Israel Emergency Room ("BI") via ambulance. (*Id*. ¶ 22). Plaintiff alleges that she had suffered a cardiac event. (Am. Compl. ¶ 25). Plaintiff, while at BI,

---

[2] This decision is also available on commercial databases. *See Russell v. Westchester Cmty. Coll.*, No. 16-CV-01712, 2022 WL 1176909 (S.D.N.Y. Mar. 11, 2022).

[3] The Local Rules of the United States District Courts for the Southern and Eastern Districts of New York instruct that a "paragraph in the [movant's] statement of material facts . . . will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Local Civil Rule 56.1(c). Furthermore, "[e]ach statement by the . . . opponent . . . including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible . . . ." *Id*. at 56.1(d). Thus, the Court deems Defendants' statements of fact admitted unless specifically controverted by Plaintiff and supported by citation to evidence. *Brooke v. Cnty. of Rockland*, No. 17-CV-03166, 2021 WL 809320, at *2 (S.D.N.Y. Mar. 3, 2021), *aff'd*, No. 21-598-CV, 2022 WL 6585350 (2d Cir. Oct. 11, 2022).

telephoned Dr. Delcourt, Associate Dean of the Department of Arts and Humanities at WCC (56.1 ¶ 17), and told her that she was having an irregular heartbeat. (*Id*.   ¶ 24). Dr. Delcourt asked Plaintiff if she needed to have her classes covered and if so, to contact HR. (*Id*.). Plaintiff stated that she was okay to work and would only be taking a day or two off. (*Id*.).

After Plaintiff's return to work, and on or about April 30, 2014, a student went to then-Director of Counseling, Ruben Barato ("Barato"), with concerns about Plaintiff's behavior towards her. (56.1 ¶ 32). Barato testified that the student was "visibly shaken up" because, according to the student, she had just had an experience with Plaintiff during which Plaintiff berated, humiliated, and cursed at her for plagiarizing a paper. (56.1 ¶ 34; Cosgriff Decl., Ex. S at 29, 123-124). Barato referred the student to Dr. Ostman, Acting Chair of the English Department and then-Professor of English at WCC. (56. 1 ¶¶ 15, 35). Dr. Ostman testified that the student mentioned to her that the incident occurred while some students were in the classroom conferencing with Plaintiff and others were out of the classroom. (Cosgriff Decl., Ex. I at 36-40). Since she began teaching classes as an adjunct at WCC, Plaintiff conducted student conferences during classroom time while sending other students out of the classroom. (*Id*. ¶ 30). Defendants contend that this practice is a violation of Plaintiff's contract, which Plaintiff disputes. (*See id.* ¶¶ 31-32). In any event, Dr. Ostman then called Plaintiff to request her syllabus and inquired whether Plaintiff had released students during class time when she should have been teaching them. (*Id*. ¶ 25). Dr. Ostman testified that Plaintiff got "very angry very fast" and hung up on her. (Cosgriff Decl., Ex. I at 42:8-16). Plaintiff disputes this. (56.1 ¶ 27).

The following day, on May 1, 2014, Plaintiff sent Dr. Ostman and Dr. Delcourt a four-page email with the subject line reading, "please give me your policy or I am filing in federal court by wed, 2 p.m." (*Id*. ¶ 36). On May 2, 2014, Plaintiff sent Dr. Ostman, Dr. Delcourt, and others an

email with the same subject line as set forth in the May 1, 2014 email, stating: "I am an arguer. I do employment law for a law firm in New Jersey . . . In other words, I can be a pushy dirt bag. . . . Even if you want to get rid of me, talk to me about it and I'll show you how to do it so you don't get sued." (Cosgriff Decl. Ex. D at 15-16).

Dr. Delcourt testified that on May 1, 2014, Plaintiff contacted her by phone and was "aggressive" and "hostile." (Cosgriff Decl., Ex. K at 131-133). Barato testified that when he told Plaintiff that the student did not feel comfortable in her class, Plaintiff contacted him by phone and left him a voice message that he felt was abusive, hostile, and angry, which he reported to security; and sent him an email accusing him of being homophobic. (*Id*., Ex. S at 58-59, 66-67).

Plaintiff sent an email on May 1, 2014 to Dr. Ostman, asking whether she was aware that Plaintiff had a heart attack on March 11, 2014 and stating, "So maybe there were reasons that I did what I have been doing, There's a reason for it." (56.1 ¶ 41). On May 2, 2014, Plaintiff sent another email to Dr. Ostman, advising that she had been hospitalized at BI, had a mild heart attack and was given clearance to return to work. She added that she had been a little "cranky" and "humbly apologized." (*Id*. ¶ 42). Plaintiff, in the ensuing days, sent many emails to Barato, Dr. Ostman, and Dr. Delcourt. (*Id*. ¶¶ 43-49).

Following a meeting on May 8, 2014 among Dr. Delcourt and others, the decision was made to not offer classes to Plaintiff for the Fall 2014 semester. (*Id*. ¶ 56). Additionally, between May 9, 2014 and May 11, 2014, Plaintiff sent at least seven emails accusing Dr. Ostman of having a connection with a defendant in Plaintiff's unrelated lawsuit against a university in New Jersey. (*Id*. ¶ 51). By email dated May 12, 2014, Plaintiff was notified that she would not be offered classes for the Fall 2014 semester. (*Id*. ¶ 57). On July 10, 2014, Plaintiff filed two discrimination complaints online. (*Id*. ¶ 60).

This litigation followed.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-3875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).[4] "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-5486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). "The question at summary judgment is whether a genuine dispute as to a *material* fact exists—not whether the parties have a dispute as to any fact." *Hernandez v. Comm'r of Baseball*, No. 22-343, 2023 WL 5217876, at *5 (2d Cir. Aug. 15, 2023); *McKinney v. City of Middletown*, 49 F.4th 730, 737 (2d Cir. 2022)).

The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial."

---

[4] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

*Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at * 4 (quoting *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her[] claim, the District Court properly granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought.

"Courts have acknowledged the dangers of summary judgment in discrimination cases: 'Because direct evidence of . . . discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'" *Benson v. Fam. Dollar Stores, Inc.*, No. 12-CV-01457, 2017 WL 11576213, at *3 (N.D.N.Y. Mar. 31, 2017) (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (citations and internal quotation marks omitted)), *aff'd sub nom. Benson v. Fam. Dollar Operations, Inc.*, 755 F. App'x 52 (2d Cir. 2018).

## ANALYSIS

I.   Disability Discrimination (Claims 1 and 3)

Plaintiff's first and third claims for relief allege that Defendants discriminated against her in violation of the ADA and NYSHRL on the basis of her disability. Defendants argue, *inter alia*, that this claim cannot survive summary judgment because there is no evidence that Plaintiff was disabled or perceived as disabled within the meaning of the ADA. As set forth below, the Court agrees and concludes that, even construing the evidence most favorably to Plaintiff, no rational jury could find that Plaintiff was disabled or perceived as disabled for purposes of this claim and that Defendants are therefore entitled to judgment as a matter of law.

The three-part burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) is used to analyze discrimination claims under the ADA and NYSHRL. *Razzano v. Remsenburg-Speonk Union Free Sch. Dist.*, No. 20-03718, 2022 WL 1715977, at *2 (2d Cir. May 27, 2022). The plaintiff must first, under that framework, establish a *prima facie* case of employment discrimination based on a disability before the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the challenged actions. *Id.*; *see also Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016) ("Under

that framework, a plaintiff must first establish a prima facie case of discrimination, which causes the burden of production to shift to the defendant to offer a legitimate, nondiscriminatory rationale for its actions.").

A *prima facie* case of disability discrimination requires a plaintiff to establish that: (1) "[her] employer is subject to the ADA;" (2) "[s]he is disabled within the meaning of the ADA or perceived to be so by [her] employer;" (3) "[s]he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation;" and (4) "[s]he suffered an adverse employment action because of [her] disability." *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008). The elements of a *prima facie* claim of discrimination under the NYSHRL are generally the same as those under the ADA. *Kinneary v. City of New York*, 601 F.3d 151, 158 (2d Cir. 2010).[5]

The ADA Amendment Act of 2008 ("ADAAA"), effective January 1, 2009, defines "disability" as (1) "a physical or mental impairment that substantially limits one or more major life activities," (2) "a record of such an impairment," or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1). Plaintiff proceeds under the theories of "actual disability" and "regarded as" having a disability.[6] The Court considers each in turn.

A. <u>Actual Disability</u>

"For purposes of determining whether an ADA plaintiff is a 'qualified individual with a disability,' 42 U.S.C. § 12131(2), the ADA defines 'disability' to include, *inter alia*, 'a physical

---

[5] "One key difference between the NYSHRL and the ADA is that the NYSHRL has a broader definition of disability than does the ADA in that it does not require any showing that the disability substantially limits a major life activity. *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, No. 21-CV-00695, 2023 WL 2691622, at *20 (S.D.N.Y. Mar. 29, 2023). "Rather, under the NYSHRL, Plaintiff need only prove that she has a medically diagnosable impairment." *Id.* (cleaned up).

[6] Plaintiff does not proceed under the "record of such impairment" prong of the ADA.

or mental impairment that substantially limits one or more major life activities.'" *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 92 (2d Cir. 2021) (quoting *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020)). "[P]ost-ADAAA, major life activities include, but are not limited to, 'caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.'" *Graham v. Three Vill. Cent. Sch. Dist.*, No. 11-CV-05182, 2013 WL 5445736, at *11 (E.D.N.Y. Sept. 30, 2013) (Bianco, J.) (quoting 42 U.S.C. § 12102(2)). Plaintiff contends that her impairment is a heart condition, and more specifically that between "at least between March 11, 2014 and May 12, 2014, Plaintiff suffered from congenital heart conditions, and had been diagnosed with SVT, pulmonic valvular stenosis, shortness of breath, palpitations, ventricular ectopy, frequent PVCs, and regurgitation of her mitral valve." (Pl. Br. at 3). She cites in support of this contention her own declaration submitted in opposition to this motion; her own deposition testimony; sealed medical records; and certain of her responses to the Rule 56.1 Statement which cited her own deposition testimony and medical records. (*Id.*). While her personal accounts at deposition and in her declaration generally support her arguments of this claimed impairment,[7] the cited medical records

---

[7] Plaintiff's testimony in some material instances, however, is inconsistent with her other sworn statements. For example, Plaintiff verified in her interrogatory responses that Dr. Kristin Jensen was the provider who determined that Plaintiff may have PTSD symptoms "following her severe heart attack" as set forth in paragraph 29 of the Amended Complaint. (Cosgriff Decl., Ex. C at 56, Interrogatory Response No. 15). However, during her deposition, Plaintiff denied that sworn statement, and testified that Dr. Yan Li was the cardiologist who told her it was common after a heart attack to feel symptoms of PTSD. (Cosgriff Decl., Ex. J at 403:6-404:3,410:16-20, 564:7-565:20). And in her Declaration submitted in opposition to this motion, she swears that it was Dr. Ferrick who informed her that "due to the severity of [her] cardiac event" that she "may feel irritable at times" and "likened the feeling of irritability and anxiety following [her] severe heart attack to that of post-traumatic stress disorder." (Doc. 254-1, "Russell Decl." ¶ 14). Further, Plaintiff failed to controvert the fact in the Rule 56.1 Statement that she provided no records to support the claim that she had a "PTSD-like feeling" after her heart attack. (56.1 ¶ 87). Importantly, the Medical Report of Howard N. Tarkin confirms that other than Plaintiff's own self-reporting, no medical evidence has been produced that reflects that she suffered any heart attack on March 11, 2014. (*See* Tobin Decl., Ex. 21 at 6, 7, 10, 11). Even where there is not a direct contradiction between prior deposition testimony and new allegations in a subsequent affirmation, on a motion for summary judgment the Court is not required to

do not support her contention.[8]

Rather, the medical records from 2013-2015 reveal that these purported impairments were self-reported. (*See* Tobin Decl., Exs. 21, 22).[9] Plaintiff did not have cardiac surgery, abnormal stress tests, intermediate coronary syndrome, serious heart problems, a history of myocardial infarction, or a heart attack. (*Id.*). While Plaintiff testified that she was told by her doctors that she

---

accept the new allegations as "genuine" issues for trial. *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial."); *Petrisch v. HSBC Bank USA, Inc.*, No. 07-CV-03303, 2013 WL 1316712, at *10-11 (E.D.N.Y. Mar. 28, 2013) (declining to consider new facts in opposition to summary judgment motion where plaintiff "had the opportunity to testify about the new allegations during her depositions" because "[p]ermitting plaintiff to add speculative and conclusory allegations to bolster her claims after defendants have moved for summary judgment without permitting defendants to conduct discovery on those new allegations would make plaintiff's case a moving target" and the defendants had been "denied the opportunity to ask follow-up questions and obtain more specific information."); *Heletsi v. Lufthansa German Airlines, Inc.,* No. 99-CV-04739, 2001 WL 1646518, at *1 n.1 (E.D.N.Y. Dec. 18, 2001) ("A party cannot amend their complaint simply by alleging new facts and theories in their memoranda opposing summary judgment."); *see also Patterson v. Patterson*, No. 20-CV-02552, 2022 WL 356513, at *6 (S.D.N.Y. Feb. 7, 2022); *Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 520 (S.D.N.Y. 2015).

[8] The Court has scoured the record in this case, sifting through the thousands of pages comprising the record on the electronic docket and in the boxes and binders of hard copies submitted to the Court, searching for documents corresponding to the myriad citations to Bates numbers which, in particular, were referenced by Plaintiff to support her claimed impairment and limitations. Unfortunately, due in part to the convoluted presentation of these motion papers which both sides here are guilty of creating (the briefs and Rule 56.1 Statement do not cite to any of the exhibit letters or numbers that were submitted on this motion, directing the Court to deposition transcripts, affidavits, reports, and medical records by, for example, deponent name or by Bates number, which required the Court to turn to other documents in an effort to piece together where it might find the cited evidence), it appears that many of the cited documents are simply missing from the record (e.g., "RC 00001-000002"; "RC 000916"; "RC 000919"; "RC 001005"; "SR 000004-000005"; "SR 001300," etc.). Parties "cannot simply dump papers on the court and expect the court to sift through them to determine if some nugget is buried somewhere in that mountain." *Emanuel v. Gap.*, No. 19-CV-03617, 2022 WL 3084317, at *5 (S.D.N.Y. Aug. 3, 2022) (quoting *Mirza v. Garnet Health*, No. 20-CV-00556, 2022 WL 826410, at *2 n.6 (S.D.N.Y. Mar. 17, 2022)). "Judges are not like pigs, hunting for truffles buried in briefs or the record." *Sea Trade Mar. Corp. v. Coutsodontis*, No. 09-CV-00488, 2015 WL 4998638, at *4 (S.D.N.Y. Aug. 20, 2015). Nonetheless, the Court accepted the parties' invitation to go on this expedition, at great judicial time and expense.

[9] The documents cited by Plaintiff to rebut Defendants' proffer that the medical evidence does not support Plaintiff's claimed conditions are either Plaintiff's statements of her own medical condition, or are medical records which incorporate Plaintiff's statements, or were not included in the exhibits presented on this motion (*see* 56.1 ¶¶ 64-79); but none are medical evidence of Plaintiff's alleged medical condition or are medical evidence refuting Defendants' statement of fact, through expert testimony, that Plaintiff was in no such condition.

had abnormal test results, her doctors' medical records fail to reveal any such abnormal test results. "Summary judgment is appropriate where, as here, medical records directly contradict Plaintiff's version of facts stated in [her] complaint and [her] Rule 56.1 Counter-Statement and where the record is devoid of evidence of any kind supporting plaintiff's description of [her] injuries—other than [her] own claims." *Perkins v. Presley*, No. 18-CV-03590, 2022 WL 769339, at *6 (S.D.N.Y. Mar. 14, 2022). Plaintiff's failure to rebut Defendants' clear proof and raise a genuine issue of material fact is fatal both to Plaintiff's ADA claim based on a theory of actual disability as well as her disability discrimination claim under the NYSHRL. *See, e.g., Zuppardo v. Suffolk Cnty. Vanderbilt Museum*, 19 F. Supp. 2d 52, 58 (E.D.N.Y. 1998), *aff'd*, 173 F.3d 848 (2d Cir. 1999) ("There is simply an absence of proof substantiating his assertions that he suffers from a disability, even under the more liberal definition of the NYSHRL.").

Even were the Court to accept as true that Plaintiff suffered from a heart condition, the record is devoid of any evidence that she was substantially limited in one or more major life activities as a result of such impairment as would be required to establish the existence of an actual disability under the ADA. Plaintiff contends that her heart conditions "substantially limited Plaintiff's ability to perform various major life activities, including walking, standing, breathing, lifting, exercising, and, concentrating." (Pl. Br. at 3). Specifically, Plaintiff argues that:

> [B]etween March 11, 2014 and May 12, 2014, as a result of her medical conditions: Plaintiff was limited in her ability to walk, stand, breath[e], lift, concentrate, and sleep; Dr. Ferrick told Plaintiff not to run or exercise and to limit the amount she walked; Plaintiff was physically incapable of playing competitive sports[;] Plaintiff's medication and heartbeat made her so tired that she was mostly bedridden[;] Plaintiff was physically unable to do even basic housework[;] the total number of classes Plaintiff was capable of teaching at a time dropped from four to two[;] and Plaintiff experienced severe, constant, and frequent shortness of breath.

(*Id*. at 17).

11

Again, Plaintiff cites in support of this contention her own declaration submitted in opposition to this motion; her own deposition testimony; and certain of her responses to the Rule 56.1 Statement which cited predominantly her own deposition testimony. The sole medical record cited by Plaintiff is Dr. Jensen's April 1, 2014 progress note which indicates that Plaintiff was getting "some exercise"—and it is not clear to the Court how this document supports Plaintiff's argument that she was substantially limited in one or more major life activities. (Tobin Decl., Ex. 37 at 8). As described in the affidavit accompanying the Medical Report of Howard N. Tarkin, Plaintiff's medical records indicate that Plaintiff, during the relevant time period, was exercising, playing tennis, walking two to three miles per day, and had started jogging. (*See* Tobin Decl., Ex. 22 at ¶¶ 17, 18).

"A diagnosis alone is insufficient to establish disability under the statute." *Ibela v. Allied Universal*, No. 21-01995-CV, 2022 WL 1418886, at *2 (2d Cir. May 5, 2022); *see also Peterec-Tolino v. Com. Elec. Contractors, Inc.*, No. 08-CV-00891, 2011 WL 5105474, at *6 (S.D.N.Y. Oct. 26, 2011) (the plaintiff's failure to offer any medical evidence substantiating claimed limitations undermines finding of disability under the ADA); *Villanti v. Cold Spring Harbor Cent. Sch. Dist.*, 733 F. Supp. 2d 371, 380 (E.D.N.Y. 2010) (concluding that doctor's letter which provided "virtually no information" "with respect to lifting, carrying, and exercising" was insufficient to show a substantial limitation of the ability to work); *see also Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 723 (2d Cir. 1994) (concluding that plaintiff failed to establish disability where, *inter alia*, she offered "[n]o medical proof" substantiating her alleged limitations).

Plaintiff has not rebutted Defendants' expert medical evidence and shown that her heart condition rose to the level of a physical impairment that substantially restricted her from performing day-to-day, essential tasks during the relevant time period as required by the first prong

of a *prima facie* case for disability discrimination. *See Diaz v. Local 338 of the Retail, Wholesale Dept. Store Union, United Food & Commercial Workers*, 13-CV-07187, 2015 U.S. Dist. LEXIS 86777, at\* 63-65 (E.D.N.Y. May 15, 2015) (heart disease does not constitute a *per se* impairment of a major life activity). Accordingly, Plaintiff has not, as against the expert medical evidence, established a genuine issue of material fact that she was substantially limited in one or more major life activities as a result of such impairment.

    B.   "Perceived" Disability

Plaintiff also proceeds alternatively on the "perceived disability" theory.[10] To succeed on such claim, the plaintiff must establish that "she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). A "plaintiff need only establish that [the] defendant regarded him [or her] as having a mental or physical impairment and is 'not required to present evidence of how or to what degree [defendant] believed the impairment affected him [or her].'" *Terpening v. McGinty*, No. 21-CV-01215, 2022 WL 17418268, at \*10 (N.D.N.Y. Oct. 5, 2022) (quoting *Rodriguez v. Verizon Telecom*, No. 13-CV-06969, 2014 WL 6807834, at \*5 (S.D.N.Y. Dec. 3, 2014)), *adopted by* 2022 WL 17415121 (N.D.N.Y. Dec. 5, 2022).[11]

---

[10] The Court disagrees with Defendants that Plaintiff abandoned the "regarded as" theory by failing to address their argument concerning this theory. (Reply Br. at 7). Plaintiff, in her opposition, fully responds by arguing the bases she believes that "a question of fact exists whether Defendants perceived Plaintiff to be suffering from a covered disability since in the two months prior to being refused reappointment." (Pl. Br. at 14-15).

[11] "Although 'disability' itself is defined differently under the ADA and NYSHRL, courts have observed that the regarded as/perceived disability inquiry is the same under [ ] both statutes." *Makinen v. City of New York*, 53 F. Supp. 3d 676, 691 n.4 (S.D.N.Y. 2014) (citing *Wagner v. Cnty. of Nassau*, No. 11-CV-01613, 2014 WL 3489747, at \*5 (E.D.N.Y. July 11, 2014) (collecting cases)).

Plaintiff argues that the following facts establish that Defendants regarded her as disabled: Plaintiff told Defendants she had a heart condition; Plaintiff told Defendants that she had a heart attack that affected her mood; Plaintiff sent Defendants a medical diagnosis; Plaintiff submitted a reasonable accommodation request at some time between March 11, 2014 and May 12, 2014 based upon her heart condition; Dr. Delcourt was present when Plaintiff visited the WCC nurse; Dr. Ostman testified at deposition that her impression of Plaintiff's behavior was crazy, bonkers, and having mental illness; and "most significantly," Dr. Delcourt's draft email that was never sent to Plaintiff. (Pl. Br. at 14). The foregoing fails to demonstrate a genuine issue of material fact as to whether Defendants regarded Plaintiff as disabled. They did not.

As an initial matter, Plaintiff's communications to Defendants does not shed light on whether *Defendants* regarded her as having a disability. "This inquiry turns on the employer's perception of the employee and is therefore a question of intent, not whether the employee has a disability . . . While the Plaintiff has alleged that [s]he informed the Defendants of [her] disability, [s]he has not alleged that [her] employer . . . regarded [her] as disabled under the ADA." *Laface v. E. Suffolk Boces*, 349 F. Supp. 3d 126, 147 (E.D.N.Y. 2018). A plaintiff must prove more than an employer's simple awareness of an employee's impairment; the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that perception caused the adverse employment action. *Gentleman v. State Univ. of New York - Stony Brook*, No. 16-CV-02012, 2021 WL 8013819, at *11 (E.D.N.Y. Mar. 31, 2021), *aff'd sub nom. Gentleman v. State Univ. of New York Stony Brook*, No. 21-1102-CV, 2022 WL 1447381 (2d Cir. May 9, 2022).

Dr. Ostman's deposition testimony likewise does not support a "regarded as" theory of disability discrimination. Plaintiff attempts to manufacture an issue of fact by cherry-picking

words from Dr. Ostman's deposition in this case that described Plaintiff's behavior in the relevant time period as "crazy, bonkers, and having mental illness." (Pl. Br. at 14 (citing Tobin Decl., Ex. 9 at 179:10-14, 218:14)).  It is quite clear to the Court, based on the testimony in the pages following the cited portions of Dr. Ostman's deposition transcript, that Dr. Ostman's description was a "hindsight impression" made years after the relevant time period, and after having received dozens of emails and threats from Plaintiff subsequent thereto. (Tobin Decl., Ex. 9 at 179-185, 218-220). Dr. Ostman's deposition testimony simply does not support an inference that Defendants believed Plaintiff was disabled during her employment at WCC.

The evidence that Plaintiff considers "most significant" in demonstrating an issue of fact whether Defendants perceived Plaintiff to be suffering from a covered disability is Dr. Delcourt's draft email to Plaintiff prepared on May 2, 2014. (Pl. Br. at 14). Dr. Delcourt's proposed email to Plaintiff, which she did not send to her, stated in relevant part, as follows:

> You wrote in your email that you were offended by Dr. Ostman's phone call, yet you admit more than once that you have been "grouchy", due to your health, in your own communication. I will tell you that your aggression on the phone yesterday was unexpected. I could not keep the phone to my ear as you sounded very loud, angry and defensive. *If this is how you are handling situations in your class, please consider reflecting on your communication style and whether or not your health may be interfering with your teaching*. This is one of the issues that has come up with one of your students, that you have been sharp and unwilling to discuss her concerns, calling her "a cheater." Name calling is not appropriate or acceptable. Please work with Dr. Ostman to work through this issue and give her the details of your plagiarism cases.

(Tobin Decl., Ex. 23 (emphasis added)).

This draft email does not form the basis for a "regarded as" claim. *Bruzzese v. Sessions*, 725 F. App'x 68, 72 (2d Cir. 2018) (supervisor's expression of concern about plaintiff's behavior and how it affected his ability to be an effective law enforcement officer was "not more than a

mere 'scintilla' of evidence" that supervisor regarded the plaintiff as disabled and insufficient to maintain a "regarded as" claim); *Bordeaux v. Halstead Prop. Dev. Mktg. LLC*, No. 20-CV-01347, 2022 WL 484992, at *11 (S.D.N.Y. Feb. 16, 2022) (granting summary judgment finding that "a reasonable jury would not understand the evidence in the record to suggest that [supervisors'] actions and any expressions of worry demonstrate that they perceived" plaintiff as disabled). Viewed in context with all the other evidence in the record, even in the light most favorable to Plaintiff, a reasonable fact-finder would not understand Dr. Delcourt's email to refer to any disability, but rather to express her concern about Plaintiff's behavior.

In sum, although the allegations in the Amended Complaint, taken as true, may have been enough to "give plausible support to a minimal inference" of discrimination on the prior motion to dismiss, the evidence in the record, even construed in Plaintiff's favor, is not enough for her to establish a *prima facie* case of discrimination at summary judgment, let alone to establish that Defendants actually discriminated against her on the basis of her disability. *See Dooley v. JetBlue Airways Corp.*, No. 14-CV-04432, 2017 WL 3738721, at *6 (S.D.N.Y. Aug. 29, 2017), *aff'd*, 751 F. App'x 52 (2d Cir. 2018).

C.  Legitimate Non-Discriminatory Reason and Pretext

Assuming *arguendo* that Plaintiff established a *prima facie* case of disability discrimination, Defendants have proffered a legitimate, non-discriminatory reason for deciding to not offer Plaintiff classes for the Fall 2014 semester.

Plaintiff, in addition to the student's report that Plaintiff "berated, humiliated, and cursed at her" (56.1 ¶ 34; Cosgriff Decl., Ex. S at 29, 123-124), telephoned Dr. Delcourt, Dr. Ostman, and Barato separately, with each later testifying in sum and substance that Plaintiff was aggressive, hostile, abusive, and angry in those calls (Cosgriff Decl., Ex. I at 42:8-16; *id.*, Ex. K at 131-133;

16

*id.*, Ex. S at 58-59, 66-67). Plaintiff also sent a number of emails to Dr. Delcourt, Dr. Ostman, and Barato in the ensuing days, taking issue with Dr. Ostman's inquiry as to Plaintiff's practice of releasing students during class time, stating, in relevant part, that: "I just think it's interesting that after I have a heart attack that I start getting all this crap from you and the school. You have no idea where I can go with that. . . . OR, you can let this go . . . . And, I am assuming that there will be no retaliation." (Cosgriff Decl., Ex. D at 17-18); "What? You guys haven't had enough lawsuits? . . . it looks like you act discriminatorily toward people with disabilities and health issues. Amazing." (*id.* at 20-21; Russell Decl., Ex. 5); "I have to tell you again that it does not look good that you've had two lawsuits that involve someone with a chronic illness and someone with a disability. . . . Then I have a heart attack and I'm getting crap. . . . What the hell is wrong with you people?" (*id.*; Cosgriff Decl., Ex. D at 22); "I don't know if I responded to this or not, but this is a shallow excuse for something else that is going on here. . . . What I do know is that the dept, as I mentioned, does not have a good employment track record when dealing with (hiring, firing, tenure) illness. . . . All of their conditions are covered under the ADA which is federal law. Then, all of a sudden, after my heart attack, I get a reprimand for conferences that seem to be common practice in the dept and that have never been at issue in the past. You could say that that's circumstantially serendipitous, but I don't think so, and a jury wouldn't think so either." (Russel Decl., Ex. 6); "I asked you if you knew [the defendant in a separate litigation] and I found out that you do . . . [I]f you were smart, you'd stay out of this because it's way too big for you . . . So, you're on notice from me. I'm on to what's going on here and will forward this info to the attorneys. . . . [I]f WCC were smart, they wouldn't make hiring decisions about me based on this or my health. . . . That's why the sudden interest in my classes, professor. Why didn't this come up in the last 27 years? I repeat: if you were smart, you'd stay out of this. If WCC were smart,

they'd stay out of this." (*Id.*). There are at least seven emails from Plaintiff to Dr. Ostman and others between May 9, 2014 and May 11, 2014, which accuse Dr. Ostman of having a connection with a defendant in Plaintiff's lawsuit against a university in New Jersey and threatening Dr. Ostman with litigation. (Cosgriff Decl., Ex. D).

Dr. Delcourt testified that she was "kind of in shock over the phone call" she had with Plaintiff (Cosgriff Decl., Ex. K at 132), and based upon that encounter, as well as the information provided to her by Dr. Ostman regarding Plaintiff's conduct, the emails that Plaintiff sent, and the student's account of how Plaintiff acted with her, the decision was made, following a May 8, 2014 meeting, to not offer classes to Plaintiff for the Fall 2014 semester. (*Id.* at 131-133, 141-143).

Insubordination and conduct that disrupts the workplace are legitimate reasons for firing an employee. *Matima v. Celli*, 228 F.3d 68, 79 (2d Cir. 2000). "[I]nappropriate behavior is indisputably a legitimate non-discriminatory reason for dismissing [an employee] from [employment], even if the behavior resulted from [her] disability." *McElwee v. Cnty. of Orange*, 700 F.3d 635, 644 (2d Cir. 2012); *see also Johnson v. L'Oreal USA*, No. 21-2914-CV, 2023 WL 2637456, at *4, *6 (2d Cir. Mar. 27, 2023) (record of plaintiff's disrespectful conduct towards her supervisor, peers, and subordinates, including sending inappropriate text messages, "provide[d] ample support for L'Oréal's asserted non-discriminatory reasons for Johnson's termination," regardless of whether the misconduct was related to a disability).

Defendants have satisfied their burden to establish a legitimate, non-discriminatory reason for the adverse employment action. *See Wade v. N. Y. City Dep't of Educ.*, 667 Fed. App'x 311 (2d Cir. 2016) (the truth of the allegations against the employee resulting in termination are immaterial); *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) ("In a discrimination case, however, we are decidedly not interested in the truth of the allegations

against plaintiff. We are interested in what motivated the employer . . . ; the factual validity of the underlying imputation against the employee is not at issue.").

The burden thus shifts back to Plaintiff to demonstrate that Defendants' reasons were a pretext for discrimination. *Osekavage v. Sam's East., Inc.*, 619 F. Supp. 3d 379, 390 (S.D.N.Y. 2022).

Plaintiff argues that the following is evidence of pretext: (i) the draft email prepared by Dr. Delcourt on May 2, 2014; (ii) the "shifting" reasons for Plaintiff's non-renewal; (iii) Defendants' excuse that Plaintiff mishandled the student interaction is unfounded; (iv) Defendants violated policy by failing to solicit Plaintiff's take on the situation with the student; and (v) Defendants' justification that Plaintiff was inappropriate with Dr. Delcourt and Dr. Ostman individually over the phone is their word against Plaintiff's about what happened in their respective conversations, which is a "standard question of fact." (Pl. Br. at 21-24).

With respect to Dr. Delcourt's unsent email, context is key. Plaintiff selectively quotes from the email, portraying the email as saying "that Plaintiff's 'grouch[iness]' suggested her health issues were interfering with her ability to teach." (*Id*. at 22 (citing Tobin Decl., Ex. 23)). First, the actual words come from two separate sentences in the draft email which read as follows: (1) "[Y]ou admit more than once that you have been 'grouchy', due to your health, in your own communication"; and (2) "If this is how you are handling situations in your class, please consider reflecting on your communication style and whether or not your health may be interfering with your teaching." (Tobin Decl., Ex. 23). Second, Dr. Delcourt explained at her deposition that she was repeating Plaintiff's explanation for her aggressive and unprofessional conduct: "I'm not saying that her health interfered with her teaching. I'm saying that *she's saying* her health interfered . . ." (Cosgriff Decl., Ex. K at 160:5-25 (emphasis added)). Third, a plain reading of the

*entirety* of the email, with those sentences in their proper context, makes clear that Dr. Delcourt simply meant that Plaintiff had characterized her own conduct as grouchy due to health issues; and that if Plaintiff had been exhibiting such conduct in her classroom—specifically the aggression, name calling, being loud, angry and defensive—it was not appropriate or acceptable. (Tobin Decl., Ex. 23). Plaintiff has introduced no evidence to suggest that this draft email could be interpreted by a reasonable jury to establish a discriminatory intent or that Plaintiff was not offered classes for the Fall 2014 semester for pretextual reasons. *See Bordeaux*, 2022 WL 484992, at *13.

The record evidence also does not demonstrate "shifting" reasons provided by Defendants for Plaintiff's non-renewal. Rather, a review of the evidence cited by Plaintiff reveals consistently that the reason for the decision not to offer Plaintiff classes for the Fall 2014 semester was because of Plaintiff's behavior: an amalgamation that began with alleged conduct reported by the student, and that which Dr. Delcourt and Dr. Ostman then experienced firsthand through phone calls and emails from Plaintiff. (Pl. Br. at 22). Plaintiff's argument is unsupported; she has not introduced evidence suggesting "dual" or "inconsistent" explanations for the decision. (*Id.*).

Plaintiff's argument that Defendants took the student's version of events as true without permitting Plaintiff to tell her side of the story—which Plaintiff contends is evidence that Defendants' explanation for the employment decision was unfounded as well as a violation of policy—distorts the legitimate, non-discriminatory reason proffered by Defendants. (*Id.* at 23-24). Defendants have not taken the position that the incident with the student on April 30, 2014 was the basis for their employment decision. Plaintiff does not cite any evidence to suggest that Defendants based their decision to not offer her classes on the student's complaint and, even if such evidence was borne out of this record, it would not be demonstrative of discriminatory intent. *Koppar v. Orange Reg'l Med. Ctr.*, No. 19-CV-11288, 2022 WL 348172, at *18 (S.D.N.Y. Feb.

3, 2022), *aff'd*, No. 22-398-CV, 2023 WL 2484650 (2d Cir. Mar. 14, 2023); *Flynn v. McCabe & Mack LLP*, No. 15-CV-05776, 2018 WL 794631, at *12 (S.D.N.Y. Feb. 8, 2018).

Finally, Plaintiff's argument that an issue of fact is created by Defendants' proffered legitimate, non-discriminatory reason because it is "their word against Plaintiff's" (Pl. Br. at 24), ignores the other documentary evidence in the record beyond Defendants' sworn testimony—in particular, Plaintiff's emails between May 1, 2014 and May 10, 2014. In other words, Defendants' testimony is corroborated by documentary evidence and there is simply nothing in this record to suggest that Plaintiff's alleged medical condition or complaints of discrimination, rather than Defendant's perception of her workplace conduct, motivated the employment decision here. "[T]here is neither a strong *prima facie* case, nor credible evidence that the employer's explanation was not held in good faith, nor any direct evidence [of discriminatory intent]." *Flynn*, 2018 WL 794631, at *12.

Accordingly, Defendants are entitled to summary judgment dismissing Plaintiff's first and third claims for relief.

II.   Retaliation (Claims 2 and 4)

"The burden-shifting framework under *McDonnell Douglas* also applies to retaliation claims under both the ADA and the NYSHRL." *Tafolla v. Heilig*, --- F.4th ---, 2023 WL 5313520, at *10 (2d Cir. Aug. 18, 2023). If the plaintiff establishes a *prima facie case*, the defendant must articulate a legitimate, non-retaliatory reason for its action, and the plaintiff then must show that the offered justification is pretext for retaliation. *Servello v. New York State Off. of Child. & Fam. Servs.*, No. 21-02541, 2022 WL 17411287, at *1 (2d Cir. Dec. 5, 2022). The elements of a *prima facie* retaliation claim under both the ADA and NYSHRL are: "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity;

(iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002); *Tafolla*, 2023 WL 5313520, at *10.

Plaintiff alleges in the Amended Complaint that Defendants unlawfully retaliated against her by refusing to employ her for the Fall 2014 semester based on her complaints of discrimination contained in emails that Plaintiff sent in May 2014. (Am. Compl. ¶ 56). She specifies in her opposition brief that the protected activities were her May 7, 9, and 10, 2014 emails and a disability accommodation request submitted on WCC's website "sometime between March 11, 2014 and May 8, 2014 requesting to be excused from extra office hours." (Pl. Br. at 20).

Defendants argue that Plaintiff's emails do not constitute protected activity and because an online discrimination form was submitted after the adverse action, there can be no causation.

A. <u>Protected Activity</u>

Emails complaining of discriminatory conduct may constitute protected activity for purposes of a retaliation claim. *Conklin v. U.S. Immigr. & Customs Enf't*, No. 20-CV-08178, 2023 WL 2537665, at *21 (S.D.N.Y. Mar. 16, 2023). Plaintiff contends that her emails to Dr. Delcourt and Dr. Ostman between May 7 and May 10, 2014 constitute protected activity. (Russell Decl., Exs. 5, 6). As set forth above, Plaintiff's dozens of emails in those four days charge Defendants with giving her "crap" after she's had a heart attack, threaten litigation, and accuse Dr. Ostman of having a relationship with a defendant in one of Plaintiff's other unrelated lawsuits. (Cosgriff Decl., Ex. D; Russell Decl., Exs. 5, 6).

Plaintiff very explicitly presses complaints of discrimination in these emails. However, anti-retaliation statutes are "not a license for offensive, disruptive, rude or demeaning behavior." *Finn v. New York State Off. of Mental Health-Rockland Psychiatric Ctr.*, No. 08-CV-05142, 2011

WL 4639827, at *18 (S.D.N.Y. Oct. 6, 2011), *aff'd sub nom. Finn v. N.Y. State Off. of Mental Health-Rockland Psychiatric Ctr.*, 489 F. App'x 513 (2d Cir. 2012). Other circuits have held "that disruptive or unreasonable protests against discrimination are not protected activity . . . and therefore cannot support a retaliation claim." *Matima*, 228 F.3d at 79 (collecting cases). Indeed, "[s]ome of these circuits locate this principle in the prima facie case, the first step in the burden-shifting under *McDonnell Douglas* . . . ." *Id*. at 79-80. This Circuit has not decided "whether such disruptive, unreasonable conduct raises an issue that bears on the prima facie case." *Id*. at 80.

The Court "need not decide whether such disruptive, unreasonable conduct raises an issue that bears on the prima facie case" (*id*.), as Plaintiff also contends that she filed a disability accommodation request on WCC's website sometime between March 11, 2014 and May 8, 2014 requesting to be excused from extra office hours with students because it would aggravate her heart condition. (Pl. Br. at 20). Requests for disability accommodation are protected activities. *Washington v. New York City Dep't of Educ.*, 740 F. App'x 730, 733 (2d Cir. 2018). Defendants argue that Plaintiff's online complaint of discrimination was not filed until July 10, 2014. (*See* 56.1 ¶ 90 (admitting that "[t]he July 10, 2014 online complaint came only after Plaintiff was not offered classes.")). But Defendants do not address Plaintiff's contention that she filed a disability accommodation request on WCC's website prior to Defendants' decision to not offer her classes for the Fall 2014 semester. Accordingly, accepting as true Plaintiff's testimony that she made a formal disability accommodation request to Defendants, the first element of a *prima facie* retaliation claim is met.

B. Causal Connection

As previously noted, Defendants argue that Plaintiff fails to demonstrate a causal connection between the protected activity and the decision to not offer her classes for the Fall 2014

23

semester because, they contend, the protected activity was Plaintiff's July 10, 2014 online complaint of discrimination. While that July 10, 2014 complaint cannot form the basis of a retaliation claim as it post-dates the adverse action, *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *7 (S.D.N.Y. Jan. 8, 2021) ("At the most basic level, defendants' allegedly retaliatory actions must occur later in time than plaintiffs' protected speech."), *aff'd*, No. 21-1329-CV, 2022 WL 121281 (2d Cir. Jan. 13, 2022), Plaintiff relies upon other timely protected activity for her claim, as discussed *supra*. She invokes temporal proximity to establish a causal connection between the adverse action on May 12, 2014 and her May 7-10, 2014 emails and disability accommodation request made on WCC's website sometime between March 11, 2014 and May 8, 2014. Defendants have not responded to this argument.

Assuming that Plaintiff has established temporal proximity and therefore satisfies the elements of a *prima facie* retaliation case, the retaliation claims still cannot survive summary judgment because Plaintiff has offered no evidence from which a rational jury could find Defendants' legitimate, nondiscriminatory reason for her non-renewal to be a pretext for retaliation.

C. Legitimate Non-Discriminatory Reason and Pretext

Defendants have proffered a legitimate, non-discriminatory reason for deciding to not offer Plaintiff classes for the Fall 2014 semester. As discussed *supra*, insubordination and conduct that disrupts the workplace are legitimate reasons for firing an employee. *Matima*, 228 F.3d at 79; *McElwee*, 700 F.3d at 644; *Johnson*, 2023 WL 2637456, at *4, *6.

Much of the evidence upon which Plaintiff relies to establish that she engaged in protected activity is the very same evidence that constitutes Defendants' legitimate, non-discriminatory reason for the adverse employment action. The Court's determination that Defendants provided a

legitimate, non-discriminatory reason for Plaintiff's non-renewal in connection with her disability discrimination claims applies equally to her claims of retaliation. Defendants have satisfied their burden to establish a legitimate, non-discriminatory reason for the adverse employment action.

The burden thus shifts to Plaintiff to "prove that [her] termination would not have occurred in the absence of a retaliatory motive." *Moore v. Kingsbrook Jewish Med. Ctr.*, No. 11-CV-03625, 2013 WL 3968748, at *20 (E.D.N.Y. July 30, 2013).  Plaintiff's purported evidence of pretext in connection with her retaliation claims is the same as that which was considered and rejected herein in connection with her disability discrimination claims. The evidence falls short for the same reasons discussed above. The record simply does not contain sufficient evidence to support an inference of retaliation. Accordingly, Defendants are entitled to summary judgment dismissing Plaintiff's second and fourth claims for relief.

III.   Aiding and Abetting (Claim 5)

Plaintiff's fifth claim for relief alleges aider and abettor liability for discrimination and retaliation against Dr. Delcourt and Dr. Ostman. As the Court has found Defendants are entitled to summary judgment dismissing Plaintiff's claims of discrimination and retaliation, there is nothing for Dr. Delcourt or Dr. Ostman to have aided or abetted.  *Heron v. Medrite Testing, LLC*, No. 21-CV-09471, 2022 WL 1214179, at *7 (S.D.N.Y. Apr. 25, 2022). Accordingly, Defendants are entitled to summary judgment dismissing Plaintiff's fifth claim for relief.

**CONCLUSION**

For the foregoing reasons, the motion for summary judgment is GRANTED and Plaintiff's Amended Complaint is dismissed.

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 247 and close this case.

25

**SO ORDERED:**

Dated:   White Plains, New York
         September 21, 2023

_____

PHILIP M. HALPERN
United States District Judge